UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ASHOKKUMAR PATEL,

           Petitioner,

   v.

H. BARRON, *et al.*,

           Respondents.

Case No. C23-937-JHC-MLP

REPORT AND RECOMMENDATION

### I.    INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Ashokkumar Patel is a federal prisoner who is currently confined at the Federal Detention Center in SeaTac, Washington ("FDC SeaTac"). He has presented to this Court for consideration a petition for writ of habeas corpus under 28 U.S.C. § 2241 in which he asserts that the Federal Bureau of Prisons ("BOP") has miscalculated his sentence because it refuses to apply earned time credits ("ETCs") towards his sentence that he is entitled to under the First Step Act ("FSA"), 18 U.S.C. § 3632(d). (*See* Pet. (dkt. # 1).) Respondents have filed a brief in opposition to Petitioner's petition (Resp. (dkt. # 10)), and Petitioner has filed a reply to Respondents' opposition brief (Reply (dkt. # 12)). The Court, having now reviewed the petition and all briefing

of the parties, concludes that Petitioner's petition for writ of habeas corpus should be granted and the BOP should be directed to recalculate Petitioner's ETCs.

## II.  BACKGROUND

On September 15, 2020, Petitioner was sentenced in the District of Massachusetts to a term of 40-months confinement following his guilty pleas to charges of conspiracy to commit wire fraud, wire fraud, and money laundering. *See United States v. Patel*, Case No. 4:18-cr-40027-TSH (D. Mass.), dkt. ## 73, 100, 113. Petitioner was directed to self-report by November 3, 2020. *See id.*, dkt. # 113 at 2. However, on October 16, 2020, Petitioner was arrested for failing to comply with orders restricting his travel, and he was placed in custody at FDC SeaTac. (*See* Pet. at ¶ 3.2; Resp., Attach. B at 3-4.) On the same date, Petitioner was charged in the District of Massachusetts with contempt based upon his failure to comply with that court's orders restricting travel. *See United States v. Patel*, Case No. 4:20-cr-40039-TSH (D. Mass.), dkt. ## 1, 5.

Petitioner was transferred out of FDC SeaTac on March 16, 2021, pursuant to a federal writ. (*See* Resp., Attach. A at 1.) Petitioner was then apparently returned to the District of Massachusetts for proceedings related to the contempt charge. *See Patel*, Case No. 4:20-cr-40039-TSH, dkt. ## 10-11. On December 14, 2022, Petitioner entered a guilty plea to that charge and was sentenced to a term of six months' confinement, to be served consecutively to the term of confinement imposed in Case No. 4:18-cr-40027. *See id.*, dkt. # 55. Judgment was entered the following day, December 15, 2022. *See id.*, dkt. # 58. Petitioner was thereafter transferred back to FDC SeaTac to serve his sentence, arriving on April 20, 2023. (*See* Pet. at ¶ 3.5.)

As relevant here, the BOP is currently crediting Petitioner with ETCs for the period beginning April 20, 2023, the date he arrived back at FDC SeaTac. (*See* Pet. at ¶ 3.5; Resp.,

REPORT AND RECOMMENDATION
PAGE - 2

1   Attach. A.) Petitioner asserts that the BOP is not currently crediting him with ETCs for the

2   period between December 15, 2022, when he was sentenced in his most recent criminal

3   proceeding[1], and April 20, 2023, when he arrived back at FDC SeaTac, because of a BOP policy

4   that conflicts with the FSA. (*See* Pet. at ¶¶ 3.6-3.7, 4.3(b)-4.4.)[2] Petitioner claims that he is

5   eligible to receive ETCs for this period, and that if the BOP were to apply these ETCs, he would

6   be entitled to an additional 60 days of credit. (*Id*. at ¶¶ 3.8-3.9.)

7           As of August 21, 2023, the BOP had calculated Petitioner's projected release date as

8   November 24, 2023. (*See* Reply, Ex. A.) Petitioner maintains that with additional credits he will

9   earn between now and his projected release date, and the additional 60 days he claims should be

10  credited, his release date would be September 9, 2023. (*Id*. at 2.)

### III.    DISCUSSION

12          Petitioner requests in his petition that the Court require the BOP to apply the ETCs he

13  believes he is entitled to under the FSA. (Pet. at 5.) Petitioner claims that he has been improperly

14  denied ETCs to which he is entitled consistent with BOP regulation 28 C.F.R. § 523.42(a), which

15  provides that inmates are not deemed eligible to receive ETCs prior to the date they arrive at

16  their designated facility. (*See id*. at ¶¶ 4.3(a)-(b)-4.4.) Respondents argue that the Court should

17  dismiss the petition because Petitioner failed to exhaust his administrative remedies before

18  seeking habeas relief. (Resp. at 4-5.) Respondents further argue that Petitioner's petition fails to

19  show that the BOP denied him credits based on the regulation he challenges, 28 C.F.R.

---

[1] Petitioner references both December 14, 2022, and December 15, 2022, as the date on which he was sentenced and eligible to begin earning ETCs. (*See* Pet. at ¶¶ 3.4-3.5, 3.8, 4.3(b).) The docket of Petitioner's second District of Massachusetts criminal case makes clear that Petitioner was sentenced on December 14, 2022, but the order committing him to the custody of the BOP was not signed and entered until December 15, 2022. *See Patel*, Case No. 4:20-cr-40039-TSH, dkt. # 58.

[2] Petitioner's petition contains two paragraphs identified as "4.3." (*See* Pet. at 3-4.) For purposes of clarity, the Court refers to those paragraphs as ¶ 4.3(a) and ¶ 4.3(b).

REPORT AND RECOMMENDATION
PAGE - 3

§ 523.42(a). (*Id*. at 5-6.) Finally, Respondents argue that Petitioner's challenge to § 523.42(a), in any event, lacks merit. (*Id*. at 6-9.)

### A.     Exhaustion of Administrative Remedies

The BOP has established an administrative remedy program through which prisoners can seek formal review of a complaint which relates to "any aspect of [their] own confinement[,]" 28 C.F.R. § 542.10(a), including the BOP's computation of their sentences, *see United States v. Wilson*, 503 U.S. 329, 335 (1992). Subject to limited exceptions not applicable here, *see* 28 C.F.R § 542.14(d), a prisoner "shall first present an issue of concern informally" to prison staff, 28 C.F.R. § 542.13(a). If dissatisfied with prison staff's informal response, the prisoner must then formally complain to the prison's warden. *See* 28 C.F.R. § 542.14(a)-(c). If dissatisfied with the warden's response, the prisoner may appeal to the Regional Director of the region in which he is confined. 28 C.F.R. § 542.15(a). And if the prisoner is dissatisfied with the Regional Director's response, he may appeal to the BOP's General Counsel. *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.*

As a general matter, "[f]ederal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986); *see also Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012); *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). However, exhaustion is not a jurisdictional requirement with which a petitioner must comply before bringing a § 2241 habeas action and it is therefore subject to waiver. *Ward*, 678 F.3d at 1045. Courts, in their discretion, may waive the exhaustion requirement in various situations, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies

would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing*, 370 F.3d at 1000 (internal quotation marks and citation omitted).

Petitioner concedes in his petition that he did not fully exhaust his administrative remedies prior to filing his petition. Petitioner indicates that he completed the first two steps of the BOP's administrative remedy process and that he filed an appeal with the Regional Director, the third step of the process, on or about June 14, 2023. (Pet. at ¶ 6.1.) It appears the Regional Director's response to that appeal is now overdue. *See* 28 C.F.R. § 542.18 (a response to an appeal filed with the Regional Director is due within 30 days, and that period may be extended an additional 30 days if necessary). Petitioner asserts that further exhaustion would be futile because the BOP's position with respect to whether he entitled to ETCs for the challenged period is consistent with its official policy as set forth in its regulations. (*Id*. at ¶ 6.2(a).)[3] Petitioner also asserts that further exhaustion would likely deny him any relief as requiring complete exhaustion would leave the Court little time to resolve his claims before he is entitled to be released. (*See id*. at 6.2(b); *see also* Reply at 2-3.)

Respondents argue that because Petitioner's claim involves a legal issue, an appeal to BOP's general counsel, the final step of the BOP administrative remedy process, would not be futile. (Resp. at 5.) Respondents also suggest that there is a lack of clarity in the existing record as to the reason the BOP treated Petitioner as ineligible to receive credits during the challenged period, and that full exhaustion would clarify the issue and "provide a more complete record on which to decide his petition." (*Id*.) Here, however, the warden's response to Plaintiff's administrative remedy request indicates that Petitioner was denied credit because he was not at his designated facility, and therefore, was not authorized to receive ETCs. (*See* Resp., Attach. C.)

---

[3] Petitioner's petition contains two paragraphs identified as "6.2." (*See* Pet. at 4-5.) For purposes of clarity, the Court refers to those paragraphs as ¶ 6.2(a) and ¶ 6.2(b).

REPORT AND RECOMMENDATION
PAGE - 5

The warden's explanation is consistent with the language of § 523.42(a), which provides that a term of imprisonment commences when the inmate arrives at the designated facility.

It appears clear that the administrative remedy process is not an efficacious avenue for review in this instance given the apparent delays in the process up to this point. (*See* Reply, Ex. B.) Moreover, the Court is satisfied that it would be futile to require further exhaustion given that the denial of Petitioner's initial administrative remedy request was in accordance with official BOP policy. Thus, the Court concludes that it is appropriate to waive the exhaustion requirement in the circumstances of this case.

### B.  FSA Time Credits

Congress enacted the FSA on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194. The FSA called for the implementation of a "risk and needs assessment" system to evaluate federal inmates' recidivism risk and included a directive to establish evidence-based recidivism reduction programs. 18 U.S.C. § 3632(a)-(b). The FSA also established various incentives for inmates to participate in its anti-recidivism programming. 18 U.S.C § 3632(d). One such incentive was the awarding of "time credits" to "be applied toward time in prerelease custody or supervised release" upon eligible inmates' successful completion of anti-recidivism programming.[4] 18 U.S.C. § 3632(d)(4)(C). Eligible inmates receive ten days of FSA time credits for every thirty days of anti-recidivism programming they successfully complete. 18 U.S.C. § 3632(d)(4)(A)(i). If the BOP determines that an inmate is at a "minimum" or "low" risk of recidivating and the inmate has not increased his risk of recidivism over two consecutive risk assessments, then he earns an additional five days of time credits for every thirty days of successfully completed programming. 18 U.S.C. § 3632(d)(4)(A)(ii).

---

[4] Several classes of prisoners are precluded from earning time credits under the FSA, but Petitioner does not appear to belong to any of them. *See* 18 U.S.C. § 3632(d)(4)(D).

REPORT AND RECOMMENDATION
PAGE - 6

The FSA prohibits inmates in certain circumstances from earning credits. As relevant here, an inmate may not earn credits "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served."

The BOP has implemented regulations codifying its procedures regarding the earning and application of time credits under the FSA. *See* 28 C.F.R. § 523.40(a). With respect to the earning of FSA credits, BOP regulations provide that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42(a). The regulations also provide that an inmate must be "successfully participating" in designated programming in order to earn FSA credits, *see* 28 C.F.R. § 523.41(c)(1), and that an inmate is not considered to be "successfully participating" if the inmate is in "[t]emporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.)," 28 C.F.R. § 523.41(c)(4)(iii).

Petitioner asserts that the BOP is improperly denying him ETCs for the period from December 14, 2022, to April 20, 2023, consistent with its position, as set forth in § 523.42(a), that a term of imprisonment does not commence until the inmate arrives at his or her designated facility. (*See* Pet. at ¶ 4.3(b)-4.4.) Petitioner argues that this conflicts with 18 U.S.C. § 3585(a), which provides that a term of imprisonment commences when the inmate is received in custody for transportation to that facility. (*See id.* at ¶ 4.4.) Petitioner further argues that the plain

REPORT AND RECOMMENDATION
PAGE - 7

language of the statute controls over the regulation and that the BOP should be crediting Petitioner with ETCs from the date he was sentenced. (*Id*. at ¶ 5.1.)

Respondents first argue that Petitioner has failed to show that the BOP denied him credits based on § 523.42(a). Respondents suggest that the record on this point is unclear and that it is more likely Petitioner was treated as ineligible to earn credits under § 523.41(c)(4)(iii) because he was out of BOP custody on a federal writ during the time in question. (Resp. at 5-6.) However, as noted above, the warden's response to Petitioner's administrative remedy request suggests that the denial of ETCs was, indeed, based on § 523.42(a). (*See* Resp., Attach C. at 1("A review of this matter reveals that you do not meet the eligibility requirements to earn Federal Time Credits due to the fact that you were not at your designated facility in the [BOP].")

Respondents next argue that even if Petitioner was denied ETCs in accordance with § 523.42(a), his challenge to that regulation lacks merit. (*See* Resp. at 6-8.) Respondents maintain that the BOP has interpreted 18 U.S.C. § 3632(d)(4)(B) to give it authority to decide when an inmate is eligible to begin earning credits under the FSA and that it has exercised that authority reasonably by determining that eligibility begins when an inmate arrives at his or her designated facility. (*Id*. at 6.) Respondents assert that the Court should review the BOP's interpretation of § 3632(d)(4)(B) under the deferential framework of *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). (*Id*.)

"Under the *Chevron* framework, a reviewing court first determines if Congress has directly spoken to the precise question at issue, in such a way that the intent of Congress is clear." *Mujahid v. Daniels*, 413 F.3d 991, 997 (9th Cir. 2005) (internal quotation marks omitted) (quoting *Chevron*, 467 U.S. at 842; *Pacheco–Camacho v. Hood*, 272 F.3d 1266, 1268 (9th Cir. 2001)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as

the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

Respondents argue that the statute is ambiguous because it does not create any affirmative entitlement for an inmate to begin earning time credits "as soon as the inmate's 'sentence commences under section 3585(a).'" (Resp. at 7 (quoting 18 U.S.C. § 3632(d)(4)(B)(ii)).) Rather, Respondents argue, the statute is "phrased as a prohibition," providing that an inmate may not earn credits prior to the date his or her sentence commences under § 3585(a). (*Id*. at 6.) Respondents maintain that, given this ambiguity, the pertinent question is whether the BOP's interpretation of § 3632(d)(4)(B) is reasonable, which Respondents claim it is. (*Id*. at 7-8.)

Other courts have considered this issue and have concluded that the statute is not ambiguous and that the *Chevron* analysis therefore need not proceed beyond step one:

> The Court's *Chevron* inquiry starts, and ends, at step one in this case because the plain language of the FSA, and of § 3585(a), clearly establishes the date upon which the FSA must allow prisoners to start earning FSA time credits. There is no ambiguity in any of the terms of § 3632(d)(4)(A) or (B), regarding when a prisoner's completion of programs will not count for purposes of earning time credits under the FSA. There is also no gap in the statute, with respect to when a prisoner is ineligible to earn FSA time credits. The Court, therefore, must give effect to the statutory text. *See Laparra-DeLeon [v. Garland]*, 52 F.4th [514, 519 (1st Cir. 2022)]; *see also Chevron*, 467 U.S. at 842-43, 104 S.Ct. 2778.

*Yufenyuy v. Warden, FCI Berlin*, 2023 WL 2398300, at *4 (D.N.H. Mar. 7, 2023); *see also Huihui v. Derr*, 2023 WL 4086073, at *5 (D.Haw. June 20, 2023) ("Congress has directly spoken to the precise question of when a prisoner is ineligible for FSA ETCs in 18 U.S.C. § 3632(d)(4)(B), which explicitly bars a prisoner from earning credits (1) before the statute was enacted, and (2) during official detention before the prisoner's sentence commences under

REPORT AND RECOMMENDATION
PAGE - 9

§ 3585(a). Section 3585(a) unambiguously provides that '[a] term of imprisonment commences' when a prisoner is received in custody awaiting transportation to the official detention facility at which the sentence is to be served. 18 U.S.C. § 3585(a).").

Respondents have offered no persuasive argument that there are viable reasons to deviate from the rulings in these other cases. This Court therefore concludes, consistent with the decisions in *Yufenyuy* and *Huihui*, that Petitioner became eligible to earn ETCs once he was sentenced in the District of Massachusetts in December 2022, and judgment was entered committing him to the custody of BOP. Accordingly, Petitioner's federal habeas petition should be granted, and the BOP should be directed to recalculate Petitioner's time credits.

### IV.    CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's federal habeas petition (dkt. # 1) be GRANTED, and that the BOP be directed to recalculate Petitioner's ETCs to include eligibility for those credits beginning December 15, 2022. A proposed Order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit within **fourteen (14) days** of the date on which this Report and Recommendation is signed. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motions calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14) days** after service of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on **September 22, 2023**.

\\

\\

REPORT AND RECOMMENDATION
PAGE - 10

DATED this 5th day of September, 2023.

MICHELLE L. PETERSON
United States Magistrate Judge