UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ASHOKKUMAR PATEL, | CASE NO. C23-937-KKE |
| Petitioner, | ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| H. BARRON, et al., | |
| Respondents. | |

## I.  INTRODUCTION AND SUMMARY OF DECISION

This matter comes before the Court on Petitioner Ashokkumar Patel's petition for a writ of habeas corpus. Dkt. No. 1. After conducting de novo review of the petition and opposition thereto, along with all supporting documents, Judge Peterson's Report and Recommendation (Dkt. No. 13 (hereinafter "R&R")), the Respondents' (hereinafter "the Government") objections to the R&R, and Petitioner's response to the objections, the Court approves and adopts the R&R, thereby granting Petitioner's petition.

## II.  BACKGROUND

Petitioner filed a writ of habeas corpus under 28 U.S.C. § 2241 asserting that the United States Bureau of Prisons ("BOP") miscalculated his sentence by failing to appropriately apply earned time credits ("ETCs") toward his sentence under the First Step Act ("FSA"), 18 U.S.C.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

§ 3632(d). United States Magistrate Judge Michelle Peterson issued an R&R recommending that Petitioner's petition be granted and that BOP should be directed to recalculate Petitioner's ETCs. Dkt. No. 13. The Government objected to the R&R, and Petitioner responded to those objections.[1] Dkt. Nos. 14-15.

The underlying facts are not in dispute and are set forth in detail in the R&R, and repeated here for the sake of clarity:

> On September 15, 2020, Petitioner was sentenced in the District of Massachusetts to a term of 40-months confinement following his guilty pleas to charges of conspiracy to commit wire fraud, wire fraud, and money laundering. *See United States v. Patel*, Case No. 4:18-cr-40027-TSH (D. Mass.), dkt. ## 73, 100, 113. Petitioner was directed to self-report by November 3, 2020. *See id*., dkt. # 113 at 2. However, on October 16, 2020, Petitioner was arrested for failing to comply with orders restricting his travel, and he was placed in custody at FDC SeaTac. (*See* Pet. at ¶ 3.2; Resp., Attach. B at 3-4.) On the same date, Petitioner was charged in the District of Massachusetts with contempt based upon his failure to comply with that court's orders restricting travel. *See United States v. Patel*, Case No. 4:20-cr-40039-TSH (D. Mass.), dkt. ## 1, 5.
>
> Petitioner was transferred out of FDC SeaTac on March 16, 2021, pursuant to a federal writ. (*See* Resp., Attach. A at 1.) Petitioner was then apparently returned to the District of Massachusetts for proceedings related to the contempt charge. *See Patel*, Case No. 4:20-cr-40039-TSH, dkt. ## 10-11. On December 14, 2022, Petitioner entered a guilty plea to that charge and was sentenced to a term of six months' confinement, to be served consecutively to the term of confinement imposed in Case No. 4:18-cr-40027. *See id*., dkt. # 55. Judgment was entered the following day, December 15, 2022. *See id*., dkt. # 58. Petitioner was thereafter transferred back to FDC SeaTac to serve his sentence, arriving on April 20, 2023. (*See* Pet. at ¶ 3.5.) As relevant here, the BOP is currently crediting Petitioner with ETCs for the period beginning April 20, 2023, the date he arrived back at FDC SeaTac. (*See* Pet. at ¶ 3.5; Resp., Attach. A.) Petitioner asserts that the BOP is not currently crediting him with ETCs for the period between December 15, 2022, when he was sentenced in his most recent criminal proceeding[2], and April 20, 2023,

---

[1] The Court commends the Government's filing of objections to the R&R on an expedited schedule to facilitate prompt resolution of Petitioner's time-sensitive request for relief. *See* Dkt. No. 15 at 1.

[2] Petitioner references both December 14, 2022, and December 15, 2022, as the date on which he was sentenced and eligible to begin earning ETCs. (*See* Pet. at ¶¶ 3.4-3.5, 3.8, 4.3(b).) The docket of Petitioner's second District of Massachusetts criminal case makes clear that Petitioner was sentenced on December 14, 2022, but the order committing him to the custody of the BOP was not signed and entered until December 15, 2022. *See Patel*, Case No. 4:20-cr-40039-TSH, dkt. # 58.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

> when he arrived back at FDC SeaTac, because of a BOP policy that conflicts with the FSA. (*See* Pet. at ¶¶ 3.6-3.7, 4.3(b)-4.4.)[3] Petitioner claims that he is eligible to receive ETCs for this period, and that if the BOP were to apply these ETCs, he would be entitled to an additional 60 days of credit. (*Id*. at ¶¶ 3.8-3.9.) As of August 21, 2023, the BOP had calculated Petitioner's projected release date as November 24, 2023. (*See* Reply, Ex. A.) Petitioner maintains that with additional credits he will earn between now and his projected release date, and the additional 60 days he claims should be credited, his release date would be September 9, 2023. (*Id*. at 2.)

Dkt. No. 13 at 2–3.

Judge Peterson explained the purpose of FSA time credits as follows:

> Congress enacted the FSA on December 21, 2018. Pub. L. No. 115-391, 132 Stat. 5194. The FSA called for the implementation of a "risk and needs assessment" system to evaluate federal inmates' recidivism risk and included a directive to establish evidence-based recidivism reduction programs. 18 U.S.C. § 3632(a)-(b). The FSA also established various incentives for inmates to participate in its anti-recidivism programming. 18 U.S.C § 3632(d). One such incentive was the awarding of "time credits" to "be applied toward time in prerelease custody or supervised release" upon eligible inmates' successful completion of anti-recidivism programming.[4] 18 U.S.C. § 3632(d)(4)(C). Eligible inmates receive ten days of FSA time credits for every thirty days of anti-recidivism programming they successfully complete. 18 U.S.C. § 3632(d)(4)(A)(i). If the BOP determines that an inmate is at a "minimum" or "low" risk of recidivating and the inmate has not increased his risk of recidivism over two consecutive risk assessments, then he earns an additional five days of time credits for every thirty days of successfully completed programming. 18 U.S.C. § 3632(d)(4)(A)(ii).

> The FSA prohibits inmates in certain circumstances from earning credits. As relevant here, an inmate may not earn credits "during official detention prior to the date the prisoner's sentence commences under [18 U.S.C. §] 3585(a)." 18 U.S.C. § 3632(d)(4)(B)(ii). Section 3585(a) provides that "[a] sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." The BOP has implemented regulations codifying its procedures regarding the earning and application of time credits under the FSA. *See* 28 C.F.R. § 523.40(a). With respect to the earning of FSA credits, BOP regulations provide that "[a]n eligible inmate begins earning FSA Time Credits after the inmate's term of imprisonment commences (the date the inmate arrives or voluntarily surrenders at the designated Bureau facility where the sentence will be served)." 28 C.F.R. § 523.42(a). The

---

[3] Petitioner's petition contains two paragraphs identified as "4.3." (*See* Pet. at 3-4.) For purposes of clarity, the Court refers to those paragraphs as ¶ 4.3(a) and ¶ 4.3(b).

[4] Several classes of prisoners are precluded from earning time credits under the FSA, but Petitioner does not appear to belong to any of them. *See* 18 U.S.C. § 3632(d)(4)(D).

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

regulations also provide that an inmate must be "successfully participating" in designated programming in order to earn FSA credits, see 28 C.F.R. § 523.41(c)(1), and that an inmate is not considered to be "successfully participating" if the inmate is in "[t]emporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.)," 28 C.F.R. § 523.41(c)(4)(iii).

Dkt. No. 13 at 6–7.

Judge Peterson went on to find that although it is undisputed that Petitioner did not exhaust his administrative remedies before filing his petition, this requirement should be waived because the exhaustion process was not effective and requiring further exhaustion would be futile. Dkt. No. 13 at 5–6. Turning to the merits of the petition, Judge Peterson concluded that the FSA unambiguously requires the BOP to recalculate Petitioner's ETCs to include eligibility beginning December 15, 2022, the date he was sentenced in the District of Massachusetts and committed to the custody of the BOP. *Id.* at 6–10.

The Government objects to Judge Peterson's recommendations on the exhaustion issue as well as on the merits of the petition. Dkt. No. 14. The Court will address each objection in turn.

### III.   DISCUSSION

**A.   Waiver of Exhaustion is Appropriate in this Case.**

BOP has created an administrative remedy program whereby prisoners can seek formal review of a complaint that relates to "any aspect of [their] own confinement" (28 C.F.R. § 542.10(a)), including BOP's computation of their sentences. *See United States v. Wilson*, 503 U.S. 329, 335 (1992). As a general matter, "[f]ederal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986). Exhaustion is not a jurisdictional requirement in Section 2241 cases, however, and is therefore subject to waiver. *See Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). Courts have discretion to waive the exhaustion

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 4

requirement if, *inter alia*, "pursuit of administrative remedies would be a futile gesture[.]" *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (cleaned up).

In this case, as noted *supra*, it is undisputed that Petitioner did not exhaust his administrative remedies in requesting recalculation of his ETCs, bringing the issue first to prison staff informally, and then to the warden.[5] *See* Dkt. No. 13 at 5. Judge Peterson waived the exhaustion requirement, finding that requiring full exhaustion would be futile. *Id.* at 6. The Government objects, contending that further administrative review would not be futile because it would serve to clarify the regulatory basis for the warden's decision. Dkt. No. 14 at 7–8. Specifically, the Government argues that it is unclear if BOP relied upon 28 C.F.R. § 523.42(a) or 28 C.F.R. § 523.41(c)(4)(iii) to deny Petitioner's request for ETC recalculation, and that this lack of clarity infects the petition because "it is unclear whether [Petitioner's] case even presents the question whether Section 523.42(a) is consistent with 18 U.S.C. § 3585(a)." Dkt. No. 14 at 7.

The Court is not convinced. Petitioner's request for administrative remedy explicitly alleges that Section 523.42(a) conflicts with the plain language of the FSA (Dkt. No. 10-3 at 3), and the warden's denial tracks the language of Section 523.42(a) in its focus on Petitioner's location. *Id*. at 2 (stating that Petitioner does "not meet the eligibility requirements to earn Federal Time Credits due to the fact that you were not at your designated facility in the Federal [BOP]")). Although the Government posits that "BOP might have treated [Petitioner] as ineligible to earn time credits" under Section 523.41(c)(4)(iii) (Dkt. 14 at 7), the warden's denial does not support this reading. *See* Dkt. No. 10-3 at 2. Section 523.41(c)(4)(iii) provides that inmates will "generally

---

[5] While Petitioner completed the first two steps of BOP's administrative process, in order to fully exhaust, Petitioner was required to appeal the warden's response to the regional director and then again to BOP's general counsel. *See* Dkt. No. 13 at 4. The Government argues that Petitioner's appeal to the regional director was rejected due to his failure to include the text of the warden's decision. Dkt. No. 14 at 8. However, the record also suggests that Petitioner emailed BOP repeatedly in advance of his appeal seeking to obtain a copy of the warden's decision and was not timely provided with one. Dkt. No. 12-2.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 5

not be considered to be successfully participating in EBRR programs or productive activities" in a variety of situations, including while they are in "[t]emporary transfer to the custody of another Federal or non-Federal government agency (e.g., on state or Federal writ, transfer to state custody for service of sentence, etc.)." However, as of December 15, 2022, Petitioner was committed to the custody of BOP via his sentence on the contempt charge.[6] Dkt. No. 13 at 10; *see United States v. Patel*, Case No. 4:20-cr-40039-TSH (D. Mass.), Dkt. No. 58. The Government does not argue otherwise. Nor does the Government argue that Petitioner was not in fact participating in programming while awaiting transfer to FDC SeaTac. As such, the Court declines the Government's invitation to find that the warden may have had Section 523.41(c)(4)(iii) in mind when denying Petitioner's administrative remedy request. Accordingly, this Court agrees with Judge Peterson's conclusion that Petitioner's administrative remedy request was denied pursuant to Section 523.42(a). *See* Dkt. No. 13 at 5-6.

Under these circumstances, because BOP followed its own regulations in denying Petitioner's request, requiring Petitioner to file additional appeals up the chain of command at BOP is unlikely to yield a different result, and the time required to further pursue administrative appeals would likely moot Petitioner's request for relief. As such, Petitioner's failure to fully exhaust his administrative remedies would be futile and the administrative appeals process is not efficacious in this case. The Court thus finds that waiver of this requirement is appropriate. *See, e.g.*, *Huihui v. Derr*, Case No. 22-00541 JAO-RT, 2023 WL 4086073, at *3 (D. Haw. Jun. 20, 2023) ("The Court concludes that the administrative remedies process is not efficacious in this case and further pursuit would be a futile gesture because . . . the Court concludes there is an error in Respondent's understanding of when Petitioner can begin earning credits under [the FSA]").

---

[6] As the Government observes, Petitioner is not seeking credit for the time between March 16, 2021, and December 15, 2022, when he was apparently transferred out of FDC SeaTac pursuant to a federal writ. Dkt. No. 14 at 4.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

**B.      Petitioner Was Eligible to Earn Credits Upon Sentencing.**

Judge Peterson concluded that BOP miscalculated Petitioner's ETCs by applying Section 523.42(a) to exclude his time spent in custody after his December 15, 2022 sentencing, when Petitioner was awaiting transportation to FDC SeaTac. Dkt. No. 13 at 10. The Government objects to this conclusion, arguing that because the FSA merely provides that ETCs cannot be earned before a sentence commences, it does not mandate when a prisoner becomes eligible to earn ETCs. Dkt. No. 14 at 9–10. According to the Government, because the FSA is ambiguous as to precisely when a prisoner becomes eligible to earn ETCs under the FSA, BOP properly decided that question and "reasonably chose to use the date on which an inmate arrives at a BOP-designated facility as the starting point for eligibility." *Id*. BOP argues that this reasonable interpretation is entitled to deference under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc*., 467 U.S. 837 (1984). *See* Dkt. No. 14 at 9–11.

"Under the *Chevron* framework, a reviewing court first determines if Congress has directly spoken to the precise question at issue, in such a way that the intent of Congress is clear." *Mijahid v. Daniels*, 413 F.3d 991, 997 (9th Cir. 2005) (cleaned up). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842–43.

As to the first step of the *Chevron* framework, and consistent with the R&R and the other courts to have analyzed this issue, the Court finds that the FSA is unambiguous as to when a prisoner can and cannot earn time credits. The FSA sets out a procedure by which a prisoner "who successfully completes evidence-based recidivism reduction programming or productive activities, *shall* earn time credits" according to a set schedule. 18 U.S.C. § 3632(d)(4)(A) (emphasis added). Section 3632(d)(4)(B) provides that prisoners are ineligible to earn ETCs (1) before the statute was enacted, and (2) during official detention before the prisoner's sentence

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7

commences under § 3585(a). The FSA also unambiguously provides that "[a] term of imprisonment commences on the date the prisoner is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a).

By contrast, 28 C.F.R. § 523.42(a) adds an additional exclusion, namely, the time in between the commencement of a prisoner's sentence and when the prisoner ultimately arrives at his BOP-designated facility where his sentence will be served. Because Section 523.42(a) sets a timeline that conflicts with an unambiguous statute, it is not entitled to *Chevron* deference and the Court must give effect to the statutory text. See *Huihui*, 2023 WL 4086073, at *5 ("In this case, Petitioner was not eligible before her sentence commenced, but under 18 U.S.C. § 3632(d)(4)(B)(ii), her ineligibility ended the moment she was sentenced under 18 U.S.C. § 3585(a) because FDC had already received her in custody . . . ."); *Yufenyuy v. Warden, FCI Berlin*, No. 22-CV-443-AJ, 2023 WL 2398300, at *3 (D.N.H. Mar. 7, 2023) ("Construed together, those provisions make it clear that prisoners "shall" earn time credits, at the statutory rate, for all qualified programs in which they successfully participate, except for the programs in which they participated while imprisoned either before the FSA was enacted, or in detention before the date when their "sentence commence[d] under 3585(a)."); *Umejesi v. Warden, FCI Berlin*, No. 22-CV-251-SE, 2023 WL 4101455 (D.N.H. Mar. 30, 2023) (same). The Court finds no reason to depart from the persuasive authority Judge Peterson relied upon and the Government has cited no authority to the contrary.

### IV. CONCLUSION

For these reasons, the Court ORDERS as follows:

1) The Report and Recommendation is approved and adopted.

2) Petitioner's petition for a writ of habeas corpus (Dkt. No. 1) is GRANTED.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 8

3) Respondents are ORDERED to recalculate Petitioner's First Step Act time credits to include eligibility for credits beginning on December 15, 2022, and to release Petitioner on the date established by that recalculation.

The clerk is directed to send copies of this order to Petitioner and to Judge Peterson.

Dated this 28th day of September, 2023.

*[signature]*

Kymberly K. Evanson
United States District Judge